J-S44028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF J'L.M.O. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.H., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 565 WDA 2019 |

Appeal from the Decree Entered March 22, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
133 of 2018

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 23, 2020**

K.H. ("Father") appeals from the decree terminating his parental rights to J'L.M.O. ("Child"). Counsel has filed a petition for leave to withdraw as counsel and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[1] We grant counsel's petition to withdraw and affirm the decree terminating Father's parental rights.

Child was born in September 2017 to J.O. ("Mother") and Father. Father was at the hospital for Child's birth. Child suffered from drug withdrawal symptoms at the time of his birth. Following a September 2017 shelter care hearing, the court concluded that returning to Mother's home would not be in Child's best interest. In October 2017, Child was adjudicated dependent.

_____

[1] Counsel filed an application to adopt the ***Anders*** brief filed by prior counsel. We grant this petition.

Mother did not reveal the identity of Child's father at the shelter care hearing or the dependency hearing. In December, Erie County Office of Children and Youth ("OCY") filed a petition for termination of parental rights.

The trial court held a hearing on the petition. It set forth the following factual history:

> [M]other did not reveal the name of [Father] to OCY until June 20, 2018. [Mother] refused to give OCY the location of [F]ather, so the agency made efforts to find [Father]. Those efforts were not successful until October of 2018. [Father] was found at the Erie County Prison after being incarcerated on September 28, 2018. [Father's] paternity of [Child] was established by the results of a DNA test given [F]ather on October 12, 2018.
>
> Lisa Langer, supervisor of the family's case, along with the ongoing caseworker [Kyra] Taylor, met with [Father] at the Erie County Prison on October 29, 2018. [F]ather told Langer that he was aware he had a son since his birth. [Father] was at the hospital when [Child] was born and cut the umbilical cord, a fact corroborated by the [Mother]. [M]other had always stated she did not know who the father was, but the Agency suspected it was [Father] and that he was living with her. [Mother] said she did not know where [Father] was, and refused to allow caseworker visits to take place in her home.
>
> Despite the fact the agency had no contact from [Father], he told Langer he knew of OCY involvement through his contacts with the mother. [F]ather also said he was aware of OCY involvement due to a video surveillance system outside [Mother's] home and so he knew when caseworkers and others would be coming in and out. Corroborating this claim by [Father] was his recognition of Ms. Taylor as the ongoing caseworker when she and Ms. Langer visited him in prison. [Father] further indicated he had been in receipt of all paperwork for this case since he would get it from [M]other.

Gaylene Abbott-Fay is a permanency caseworker at OCY who was assigned [Child's] case. She reported that the foster home he has been in since his discharge from the hospital is an adoptive resource. The foster parents began working with [C]hild while he was still in the NICU as a drug exposed child. Their efforts continued in the foster home, and [Child] is now on track developmentally despite his precarious birth. [C]hild has thrived in the foster home and receives stability, structure, support and the routine he needs by being drug exposed. Ms. Abbott-Fay concluded [Child's] best interests would be served by terminating [F]ather's parental rights as [C]hild has thrived in the foster home and receives the stability, structure, support and routine he needs as a drug-exposed child. [Child's] growth with his potential adoptive parents demonstrates that there will be no detrimental impact upon [C]hild by the termination of [F]ather's parental rights. [Father], other than the day [Child] was born, has not seen the child or been a part of his short life. As Ms. Abbott–Fay testified, [F]ather never stepped up to be a parent, and was not in any position currently to provide any parenting. [Father] had never contacted [OCY] about his son.

Lisa Langer believed as well that it was in [C]hild's best interests to terminate [Father's] parental rights. [F]ather had never supported [C]hild. Conditions which led to [C]hild's placement had not been alleviated and [Child] needed stability and permanence[.]

Trial Court Opinion, filed May 14, 2019, at 1-3. Following a hearing on the petition to terminate parental rights, the trial court found the Agency had established by clear and convincing evidence grounds for termination under 23 Pa.C.S.A. 2511(a)(1), (2), (4), (5), and (8), and that termination was

proper under Section 2511(b). The court granted the petition to terminate.[2] Father filed a timely notice of appeal.[3]

Before reviewing the merits of an appeal in which a counsel has submitted an *Anders* brief, we must first determine whether counsel has satisfied the requirements for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Further, in the *Anders* brief, counsel seeking to withdraw must:

---

[2] The trial court also terminated Mother's parental rights to Child. We affirmed this order on October 18, 2019. *See Adoption of J'L.M.O.*, No. 530 WDA 2019 (Pa.Super. filed October 18, 2019).

[3] Original appellate counsel filed a petition to withdraw and an *Anders* brief. She subsequently left her place of employment, withdrew from this case, and new counsel entered an appearance. Following repeated orders and memoranda from this Court requiring counsel to file a petition to withdraw that complied with the dictates of *Anders*, and counsel's failure to comply, we remanded to the trial court for the appointment of new counsel. New counsel entered an appearance and filed a petition to withdraw and a petition to adopt the prior *Anders* brief.

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Here, counsel has complied with the requirements of **Anders** and **Santiago**. Counsel filed a petition to adopt the **Anders** brief filed by prior counsel, a request that we grant. The **Anders** brief provides a summary of the procedural and factual history, with citations to the record; refers to items in the record that could arguably support the appeal; sets forth counsel's conclusion that the appeal is frivolous; and explains counsel's reasons for this conclusion. Further, counsel filed a petition to withdraw with this Court, sent a copy of the **Anders** brief to Father, and informed Father that he had the right to proceed *pro se* or with new retained counsel.

We next turn to the issues raised in the **Anders** brief:

> 1. Whether the Orphan's Court committed an abuse of discretion and/or error of law when it concluded that the ECOCY established grounds for termination of parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (4), (5), (8).

> 2. Whether the Orphan's Court committed an abuse of discretion and/or error of law when it concluded that the termination of [Father's] parental rights was in the Child's best interest pursuant to 23 Pa.C.S.A. § 2511(b).

**Anders** Br. at 4 (trial court answers omitted).

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We may find an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means

evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (quoting *In re Z.S.W.*, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Section 2511 requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

Where the trial court has terminated parental rights pursuant to multiple subsections of Section 2511(a), we need only agree with the trial court's decision as to one subsection, as well as to its analysis under Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we will address only the court's decision to terminate pursuant to Section 2511(a)(1). That subsection provides that a parent's rights to a child may be terminated if:

- 7 -

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). "With respect to any petition filed pursuant to subsection (a)(1) . . . , the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

Subsection 2511(a)(1) requires the moving party to prove by clear and convincing evidence that the subject parent engaged in "conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008). The parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (quoting *In re Burns*, 379 A.2d 535 (Pa. 1977)). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, the trial court found that OCY established grounds for termination under Section 2511(a)(1). 1925(a) Op. at 4-5. The Court explained:

> A review of the evidence provides a portrait of a father who wanted nothing to do with his child. Despite [M]other's refusal until June 20, 2018 to identify [Father] as the father of [Child], [Father] knew from the child's birth that he was [C]hild's dad. [Father] was present at the birth; cut the umbilical cord; and knew of [C]hild's placement with OCY. [F]ather was in communication with [M]other during the [OCY's] involvement, and had access to video surveillance of those who came to [Mother's] residence to such an extent, that he knew who the ongoing caseworker was for the family. Despite [Father's] knowledge of [C]hild's placement with [OCY], he never came forward to offer any support or interest in [Child]. [OCY] went through a number of efforts to track down [Father], and was only able to contact him once he was incarcerated, a year after the child's placement. [Father's] actions evidence a "father" in name only. [F]ather knew OCY couldn't identify or locate him, and he did nothing to correct that fact. [Father] took no affirmative steps to demonstrate an interest in his son or his son's development. [Father], since he was present at [C]hild's birth, had to know of the extremely serious concerns over the boy[] being born drug exposed. [F]ather never showed any concern for that condition, or [C]hild's welfare.

***Id.*** at 5. The trial court concluded that Father's conduct "clearly evidenced a settled purpose to relinquish his parental rights to [Child]." ***Id.*** at 17. It reasoned that "[Father] refused to come forward for over a year after the child's placement to demonstrate any interest or concern for his son [and w]ithout the Agency's efforts to locate the father, [Father] would have been content to stay unknown and anonymous." ***Id.*** It noted that "[o]ver a period

in excess of 12 months, [F]ather did not evidence any desire or ability to parent his son." *Id.*

The record supports the trial court's factual findings and it did not abuse its discretion or err as a matter of law in finding termination proper under Section 2511(a)(1). Father knew Child had been adjudicated dependent and had been removed from the home, and made no effort to meet or parent Child.

We next address whether the trial court erred in finding termination would best meet Child's developmental, physical and emotional needs and welfare under Section 2511(b).

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. *See* 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa.Super. 2006). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *In re C.M.S.*, 884 A.2d at 1287. The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

Here, the trial court found that Child was "thriving and developmentally on target due to the attention provided by his foster parents." 1925(a) Op. at 6. It found Child was "in a good, stable home and has bonded well with the

potential adoptive parents." *Id.* It concluded that there was "no parental bond between [F]ather and [Child] and the interests of Child are best served by termination." *Id.* at 7.

We agree with counsel that the issues raised in counsel's *Anders* brief are wholly frivolous. The record supports the trial court's factual findings and it did not err as a matter of law or abuse its discretion in finding termination would best meet Child's interests under Section 2511(b). The testimony established that Child bonded with his foster parents and that he was thriving in their care. Further, Father has had no contact with Child following Child's birth. The record contains no evidence suggesting contrary conclusions. It thus provides no basis for challenging the trial court's decision to terminate Father's parental rights under Subsection 2511(a)(1) or Section 2511(b).

Moreover, our independent review of the record has disclosed no non-frivolous issue. Therefore, we grant counsel's petition to withdraw and affirm the decree terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: March 23, 2020